UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Alemnis Sigfrido Lopez Crawford,

Petitioner

v.

Todd Blanche, et al.,

Respondents

Case No. 2:26-cv-01552-CDS-BNW

**Order Granting Petitioner's Request for Release and Ordering Respondents to Release Petitioner by Thursday, October 22, 2026**

[ECF No. 25]

This court previously granted in part petitioner Alemnis Sigfrido Lopez Crawford's petition for a writ of habeas corpus related to his detention by Immigration and Customs Enforcement (ICE) following a constitutionally insufficient bond hearing and ordered the respondents to give Lopez Crawford another hearing. Order, ECF No. 14. That hearing was again insufficient, so I ordered Lopez Crawford to be provided with a third hearing and warned that failure to provide Lopez Crawford with a constitutionally sufficient hearing would result in an order for Lopez Crawford's release. Order, ECF No. 24. Following the third hearing, Lopez Crawford filed a status report asserting that the bond hearing was again constitutionally insufficient and requesting his immediate release. Pet'r's status report, ECF No. 25. The respondents did not respond to Lopez Crawford's assertions. *See* Resp'ts' status report, ECF No. 26. After reviewing the audio recording[1] of Lopez Crawford's most recent bond hearing, I find that the hearing was constitutionally insufficient because the IJ's decision was not supported by the evidence and the IJ shifted the burden of proof to Lopez Crawford. I therefore order Lopez Crawford's release.

[1] The audio recording of the third bond hearing, *see* Notice of manual filing, ECF No. 28, is incorporated in this order as if fully set forth herein because a transcript of the hearing is not yet available and, even if it was, would not capture the raised tone used by the IJ and the IJ's frequent interruption of Lopez Crawford's counsel, which is discussed below. Citations to the audio recording are identified as "Audio at _:__:__."

## I. Background

### A. Lopez Crawford is detained by ICE and denied bond.

Lopez Crawford is a citizen of Nicaragua who has lived in the United States since 2001. ECF No. 1 at 6; Notice to appear, Pet'r's Ex. D, ECF No. 2-4 at 2; I-213 Form, Pet'r's Ex. E, ECF No. 2-5 at 2. From 2015 through 2022, Lopez Crawford was a beneficiary of the Deferred Action for Childhood Arrivals (DACA) program. ECF No. 1 at 8. Lopez Crawford failed to renew his DACA application in 2022. *Id.* at 3.

In March 2025, Lopez Crawford was arrested by Las Vegas Metropolitan Police (LVMPD) for driving under the influence (DUI), a misdemeanor offense. ECF No. 2-5 at 4. Lopez Crawford was later released, but a bench warrant was issued because Lopez Crawford failed to appear for a court hearing. *Id.* In March 2026, LVMPD arrested Lopez Crawford on the bench warrant. *Id.* His misdemeanor case is currently pending before the Las Vegas Justice Court. *Id.*

Days after Lopez Crawford was arrested by LVMPD, Lopez Crawford was detained by ICE. ECF No. 1 at 3. An IJ held a bond hearing for Lopez Crawford, found him to be a danger to the community, and denied him bond. *Id.* at 10. In making this finding, the IJ held "the respondent ha[d] not demonstrated he [wa]s not a danger to the community." IJ order, Pet'r's Ex. G, ECF No. 2-7 at 2. Shortly after, the IJ issued a bond memorandum. Bond memo., Resp'ts' Ex. E, ECF No. 10-5. Therien, the IJ explained that it considered Lopez Crawford's criminal history and found that Lopez Crawford "had not demonstrated that he was not a danger to the community and denied his request for release on bond." *Id.* at 2. The IJ explained that while "the DUI charge remain[ed] pending, he drove his motor vehicle into a wall resulting in injury to himself and property damage. This demonstrates a disregard for public safety." *Id.* at 2.

**B. Lopez Crawford files a petition for a writ of habeas corpus, which I grant in part.**

Months after the bond hearing, Lopez Crawford initiated this action by filing a writ of habeas corpus petition in which he argued his bond hearing was constitutionally insufficient. Pet., ECF No. 1. I agreed with Lopez Crawford and granted his petition in part. Order, ECF No. 14. I concluded that his hearing did not adequately comport with due process because the IJ improperly shifted the burden by requiring Lopez Crawford to provide evidence that he was not a flight risk instead of requiring the government to meet its burden that he should be detained. *Id.* at 9. I ordered respondents to give Lopez Crawford another bond hearing and explained that the respondents had to justify Lopez Crawford's continued detention by a showing of clear and convincing evidence that Lopez Crawford would likely flee or pose a danger to the community if released. *Id.*

**C. Lopez Crawford is denied bond at a second bond hearing.**

At the second bond hearing, the IJ denied Lopez Crawford bond because she found that the Department of Homeland Security (DHS) met its burden of establishing by clear and convincing evidence that Lopez Crawford posed a flight risk and a danger to the community. Pet'r's Ex. A, ECF No. 15-1. The IJ explained that although Lopez Crawford had several positive mitigating factors, he was arrested for a DUI, failed to appear before the court for the charge, and his drunk driving resulted in an accident serious enough to cause him to be transported to a hospital for treatment. *Id.* at 2–3.

**D. Lopez Crawford files a motion to enforce my order on his petition, which I grant in part.**

Lopez Crawford believed his second bond hearing was also constitutionally insufficient, so he moved the court to enforce its prior order on his petition and order his immediate release. Mot., ECF No. 16. I agreed that the second bond hearing was insufficient and granted the motion in part, ordering that Lopez Crawford be given a third bond hearing and warning that I would order Lopez Crawford's release if the third hearing was against insufficient. Order, ECF No. 24.

Notably, I explained that "the record remains unclear as to how [the second] hearing was constitutionally sufficient given that criminal history alone is insufficient to justify denial of bond, and the evidence here shows only an arrest of the petitioner without proof of a willful failure to appear." *Id.* at 4.

**E. Lopez Crawford has a third bond hearing.**

Lopez Crawford appeared before an IJ for a third bond hearing that lasted about an hour. Audio at 0:00:00–1:02:18. Lopez Crawford's counsel received around ten minutes notice of the hearing and was told that there was no other time to set the hearing. Audio at 0:06:10–0:06:50. DHS introduced only Lopez Crawford's removal order and a rejection notice of Lopez Crawford's previous appeal for the purpose of correcting what it called a "factual fallacy" regarding whether there was a pending appeal before the BIA.[2] Audio at 0:01:32–0:03:35. The IJ then spent approximately the next twenty minutes of the hour-long hearing arguing with Lopez Crawford's counsel regarding the admission of those documents after counsel tried to inform the court that she timely cured the defect that caused the appeal to be rejected and thus there was a pending appeal. Audio at 0:03:35–0:25:25. During this time, the IJ interrupted counsel, raised her voice at counsel,[3] and insulted counsel. Indeed, Lopez Crawford's counsel stated on the record that "the court doesn't have to yell," which resulted in the IJ calling counsel "unprofessional" and characterizing counsel's comment as "snide." Audio at 0:04:00–0:05:07.

After that evidentiary issue was resolved, the IJ first asked for Lopez Crawford's position on the matter of bond despite that the burden was on DHS. Audio at 0:25:59–0:26:13. The IJ then questioned counsel repeatedly regarding what happened after Lopez Crawford allegedly drove under the influence (i.e., whether there was an accident and whether he sustained injuries), including asking counsel whether there was a blood-alcohol test and whether counsel had a

[2] This court already addressed this concern at a hearing on October 1, 2026, where I found that Lopez Crawford presented sufficient evidence that there was a pending appeal, so I temporarily stayed his removal. ECF No. 24 at 1 & n.1.

[3] The court recognizes that, at times, counsel's tone likewise expressed frustration.

copy of the police report, despite counsel declining to comment on the pending criminal case because of the protections afforded under the Fifth Amendment. Audio at 0:25:51–0:42:38. The IJ also repeatedly chastised counsel for allegedly not being candid[4] with the court after counsel said she did not know what happened, noting that one of Lopez Crawford's own exhibits—a declaration by his mother—stated that Lopez Crawford ran into a wall and was taken to the hospital. Audio at 0:39:13–0:41:34; *see also* Decl., ECF No. 16-1 at 25, ¶ 6 (explaining that Lopez Crawford "was involved in a car accident in which he crashed into a wall and was taken to the hospital for treatment").

DHS presented approximately five minutes of argument throughout the hour-long hearing. During that time, DHS argued that the IJ could make reasonable inferences based on Lopez Crawford's invocation of his Fifth Amendment right regarding the DUI. First, DHS argued that the IJ could make the reasonable inference that Lopez Crawford was drunk driving with his child in the car based on the declaration of Lopez Crawford's life partner stating that their child was involved in a car accident—although Lopez Crawford's counsel clarified that the declaration was describing *an accident*, not the pending DUI, involving the child and the child's mother, not the child and Lopez Crawford—and that alone was enough to demonstrate that Lopez Crawford was a danger to the community. Audio at 0:31:03–0:32:35, 0:36:02–0:38:10; *see also* Decl., ECF No. 16-1 at 33, ¶ 7 (stating that "our baby and I were involved in a serious car accident" over a year after the alleged DUI). Second, DHS argued that it was not relying solely on the DUI but was also relying on *In re Lopez Rico*, 29 I. & N. Dec. 780 (BIA 2026), which DHS asserted provided that the IJ could make reasonable inferences regarding the DUI because Lopez Crawford invoked his Fifth Amendment right through counsel, and that the IJ should therefore infer that the DUI was a serious and dangerous event. Audio at 0:50:44–0:54:12. The IJ however rejected DHS's argument, finding that Lopez Crawford's Fifth Amendment rights were not

[4] The court acknowledges, however, that counsel could have better answered the IJ's questions with more directness.

implicated because she had not asked about the pending DUI and instead had asked about the aftermath of the DUI (i.e., the accident and injuries). *Id.*

Following that argument, the IJ concluded that, despite Lopez Crawford's "many positive equities" and "sympathetic circumstances," DHS demonstrated Lopez Crawford was a danger to the community. Audio at 0:55:41–1:01:36. Specifically, the IJ found Lopez Crawford to be a danger because he was arrested for DUI, crashed into a wall, and was transported for a medical evaluation.[5] Audio at 0:58:32–1:01:36. The IJ explained that even though the DUI was only a pending charge, crashing into a wall is inherently dangerous, which was only made more dangerous with the allegation of DUI. *Id.* Accordingly, the IJ denied bond. Audio at 1:01:30–1:01:36.

**F. Lopez Crawford files a status report requesting his immediate release.**

Shortly after the hearing, Lopez Crawford filed a status report informing the court that the hearing was not constitutionally sufficient because the "Federal Respondents introduced no new evidence pertaining to their burden of proof that Petitioner is not a danger to the community," and that "[t]he Immigration Judge again impermissibly shifted the burden of proof to Petitioner and concluded, based on the single pending criminal charge, that Petitioner was a danger to the community." ECF No. 25 at 2.

Days later, the federal respondents filed their own status report stating "the present case should be closed, as the relief requested was fully granted" when "Petitioner had a custody redetermination hearing" and "[b]ond was denied after the Department of Homeland Security met its Court ordered burden by demonstrating that Petitioner is a danger to the community."

---

[5] The IJ stated that she accepted this court's purported finding that Lopez Crawford's failure to appear before the Las Vegas Justice Court regarding his DUI charge was not willful and thus the IJ did not consider the alleged failure to appear when deciding bond during the third hearing. Audio at 0:57:49–0:58:26. I did not make a factual finding on this point, however. Instead, I stated that there was not clear and convincing evidence presented by the federal respondents regarding whether Lopez Crawford was served in that proceeding to support the conclusion that he willfully did not appear. ECF No. 24 at 3–4.

Resp'ts' status report, ECF No. 26 at 1–2. In support of that argument, the federal respondents attached the IJ's form order stating, without explanation, that "DHS has demonstrated that the respondent is a danger to the community." Resp'ts' Ex. A, ECF No. 26-1 at 2. The federal respondents did not respond to the points raised in Lopez Crawford's status report.

**II. Discussion**

It is well-established that "[w]hen determining whether a noncitizen is a danger to the community or risk of flight, an [immigration judge] weighs nine factors, pursuant to BIA precedent." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *10 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024)). The factors the IJ "may" consider "include any or all of the following": (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States. *In re Guerra*, 24 I. & N. Dec. at 40. The Ninth Circuit has recognized one of the "most pertinent" factors at custody redeterminations is an "alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *See Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011). Although a person's "criminal record is surely relevant to a bond assessment, *Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness." *Singh*, 638 F.3d at 1206. Importantly, it is the government's burden during a bond hearing to establish that a petitioner is a danger to the community. *See Martinez*, 124 F.4th at 785.

On habeas review, this court evaluates an immigration court's determination as to dangerousness and flight risk for abuse of discretion.[6] *See Martinez*, 124 F.4th at 779, 784–85. Under that standard, this court cannot reweigh evidence. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). Rather, this court can determine only whether the correct legal standard was applied. *Id.* "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019). First, a person can bring a challenge "based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* The second option is to assert that the IJ applied the incorrect standard to the facts. *See id.*

I conclude that the evidence could not have supported the IJ's decision—a conclusion I made the last time the IJ denied bond under the same facts. *See* ECF No. 24 at 3–4. As an initial matter, the only evidence the federal respondents introduced during the hearing was Lopez Crawford's removal order and the BIA's denial of his appeal based on insufficient funds to pay the required fee. *See* Removal order, ECF No. 20-1; Denial of appeal, ECF No. 20-2. The removal order explains that Lopez Crawford was arrested for DUI after crashing into a wall and being hospitalized:

> More significantly, the record reflects that [Lopez Crawford] was arrested on March 8, 2025, after driving while intoxicated and crashing into a wall, sustaining injuries requiring hospitalization. His spouse, in testimony, acknowledged that he had been drinking and then drove while intoxicated and crashed into a wall, sustaining injuries requiring hospitalization.

ECF No. 20-1 at 7. However, that document does not explain the circumstances surrounding the crash—such as Lopez Crawford's blood-alcohol content, the speed of the car when it crashed

[6] While Lopez Crawford does not challenge whether he was provided notice and an opportunity to be heard, I note my concern that Lopez Crawford's counsel was given only ten minutes notice of the hearing and was repeatedly interrupted and chastised throughout the hearing by the IJ who frequently raised her voice at counsel.

into the wall, the damage to the wall or Lopez Crawford's car, or the road conditions at the time of the crash—nor does it specify the injuries Lopez Crawford sustained, to support an inference that the crash was inherently dangerous. Instead, DHS requested the IJ *infer* the incident was a serious and dangerous event because Lopez Crawford invoked his Fifth Amendment right. In total, that is not clear and convincing evidence of dangerousness. Said otherwise, the fact that Lopez Crawford crashed into a wall, was sent to the hospital, was arrested for a DUI, and invoked his Fifth Amendment right not to discuss the pending DUI, could not produce in the IJ the abiding conviction that it is highly probable that Lopez Crawford is a danger to the community. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (explaining that "[c]lear and convincing evidence requires greater proof than preponderance of the evidence" and that "[t]o meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [sic] highly probable'" (quotation omitted)). This is especially true when the IJ stated that Lopez Crawford had many positive equities and just the one *pending* DUI charge. *See In re Guerra*, 24 I. & N. Dec. at 40 (providing for an IJ to weigh the noncitizen's criminal record, including the *extensiveness* of criminal activity, against several positive equities).

Even more, the IJ impermissibly shifted the burden from DHS to Lopez Crawford. *Cf. Martinez*, 124 F.4th at 785–86 (considering whether the BIA shifted the burden of proof regarding dangerousness onto the noncitizen); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1123 (9th Cir. 2004) (concluding that "[t]he IJ erred by placing the burden of proof on [the noncitizen] rather than on the government" when deciding relocation), *as amended by* 2004 WL 2435489 (9th Cir. Nov. 2, 2004). Although the IJ stated that DHS met its burden, implying that the IJ applied the correct burden of proof, the IJ had Lopez Crawford present his arguments first, during which the IJ tried to obtain information from Lopez Crawford regarding his dangerousness. Indeed, DHS only argued for approximately five minutes during the one-hour hearing. And the evidence the IJ

relied upon, the declaration of Lopez Crawford's mother and another from his life partner, which were evidence produced by Lopez Crawford, not DHS.

Because the evidence could not have supported the IJ's decision and the IJ shifted the burden of proof from DHS to Lopez Crawford, I conclude that Lopez Crawford's most recent bond hearing was again constitutionally deficient. And because this is now the third bond hearing that was constitutionally insufficient since Lopez Crawford was detained in March 2026, I therefore order his release.

## III. Conclusion

IT IS HEREBY ORDERED that petitioner Alemnis Sigfrido Lopez Crawford's request for immediate release **[ECF No. 25] is GRANTED**.

IT IS FURTHER ORDERED that the respondents must release petitioner Alemnis Sigfrido Lopez Crawford from the custody of the Henderson Detention Center by Thursday, October 22, 2026, no later than 4:00 p.m. The respondents must transport Lopez Crawford to 501 Las Vegas Blvd. South, Las Vegas, Nevada that same day. The respondents must advise Lopez Crawford's counsel of the estimated time of release in advance of that release for coordination purposes.

IT IS FURTHER ORDERED that Lopez Crawford is placed under the *same* order of supervision that was in place before he was detained in March 2026. The federal respondents must not impose release conditions that substantially interfere with Lopez Crawford's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

IT IS FURTHER ORDERED that the respondents must return all of Lopez Crawford's personal property to him upon his release.

IT IS FURTHER ORDERED that the federal respondents must file a notice of compliance with this order detailing the date, time, and location of his release no later than Monday, October 26, 2026, at 5:00 p.m.

IT IS FURTHER ORDERED that the respondents may not re-detain Lopez Crawford during the pendency of his current removal proceedings without a pre-deprivation, individualized hearing to determine whether detention is appropriate.

IT IS FURTHER ORDERED that if Lopez Crawford is going to be re-detained, the federal respondents must give him adequate notice of the detention hearing.

Dated: October 20, 2026

_______________________________
Cristina D. Silva
United States District Judge